IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| COMMUNITY BANK OF TRENTON, ) | | |
| on behalf of itself and all other ) | | |
| similarly situated institutions, ) | | |
| ) | | |
| Plaintiff, ) | Case No.: | |
| ) | | |
| v. ) | | |
| ) | | |
| SCHNUCK MARKETS, INC., ) | | |
| ) | | |
| Defendant. ) | | |

**CLASS ACTION COMPLAINT**

COMES NOW the Plaintiff, Community Bank of Trenton ("Bank"), individually and on behalf of all other similarly situated financial institutions ("Class"), and for its Class Action Complaint against the Defendant, Schnuck Markets, Inc. ("Schnucks"), states and alleges the following upon information and belief:

<u>Introduction</u>

1. Bank brings this action on behalf of itself and the Class seeking damages caused by Schnucks' failure to prevent a data breach that resulted in the unauthorized disclosure of millions of customer names, credit and debit card ("plastic card") account numbers, expiration dates, card verification values, and other personally identifying information and confidential card data ("PII/CCD") to third parties. As a result of the data breach, the Bank and the Class have incurred substantial damages in the form of, *inter alia,* expenses associated with the cancellation and reissue of compromised plastic cards, absorption of fraudulent

1

charges made to such cards, lost profits, and lost business opportunities.

## Jurisdiction and Venue

2.	This Court has subject matter jurisdiction over the Bank's claims under 28 U.S.C. §1332(a) and (d) because the Bank and Schnucks are citizens of different states, there are 100 or more members of the Class, at least one member of the Class is diverse from the Missouri citizenship of Schnucks, and the matter in controversy exceeds $5,000,000, exclusive of interest and costs. This Court has *in personam* jurisdiction because the Bank resides in and has its headquarters in this District and Schnucks is found in and conducts business in this District.

3.	Venue is proper under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to this action occurred in this District and a substantial part of property that is the subject of this action is situated in this District.

## Parties

4.	Bank is an Illinois state chartered bank with its main office in Trenton, Illinois.

5.	Schnucks is a Missouri corporation with its headquarters and principal place of business in St. Louis, Missouri. Schnucks owns and operates more than 100 retail grocery stores throughout Illinois, Missouri, Indiana, Iowa, and Wisconsin.

## Class Action Allegations

6.	Bank brings this action on its own behalf and on behalf of all other

financial institutions similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. The Class is defined as follows:

> All banks, credit unions, financial institutions, and other entities in the United States that issue credit or debit cards or any similar device that contains a magnetic stripe or other means of information storage whose customers' information was compromised due to the data breach first announced by Schnucks on March 15, 2013, and who were thereby damaged.

7. Bank is a member of the Class it seeks to represent.

8. This action satisfies the procedural requirements set forth in Rule 23 of the Federal Rules of Civil Procedure.

9. Schnucks' conduct has caused injury to members of the Class.

10. The Class is so numerous that joinder of all members is impracticable. More than 1,700 financial institutions are located within the states in which Schnucks does business and hundreds of those institutions have branches in the same cities in which Schnucks operates its grocery stores and issue plastic cards to their customers.

11. There are substantial questions of law and fact common to the Class. These questions include:

   a) whether Schnucks' actions and omissions resulted in the unauthorized disclosure of its customers' PII/CCD;

   b) whether Schnucks took reasonable steps to properly secure its computer networks and payment processing systems to prevent unauthorized disclosure of its customers' PII/CCD;

   c) whether Schnucks took reasonable steps to recognize the data

     breach and determine its extent;

d) how and when Schnucks learned or should have learned of the data breach and what steps it took to warn its customers, financial institutions, and the public at large that use of plastic cards at its stores could result in unauthorized disclosure of its customers' PII/CCD;

e) whether Schnucks failed to use reasonable care and commercially available methods to secure and safeguard its customers' PII/CCD;

f) whether Schnucks' delay in informing its customers, financial institutions, and the public at large of the security breach was unreasonable;

g) whether Schnucks' method of informing its customers, financial institutions, and the public at large of the security breach was unreasonable;

h) whether Schnucks improperly retained customer PII/CCD;

i) whether Schnucks owed a duty to the Bank and other members of the Class to use reasonable care in connection with its use and retention of customer PII/CCD;

j) whether Schnucks breached its duties to exercise reasonable care in obtaining, using, retaining, and safeguarding its customers' PII/CCD;

k) whether Schnucks' breach of its duties proximately caused damages

    to the Bank and the other members of the Class; and

  l) whether the Bank and other members of the Class are entitled to damages and other relief as a result of Schnucks' breach of its duties alleged herein.

12.  The Bank's claims are typical of the Class. The same events and conduct that give rise to the Bank's claims and legal theories also give rise to the claims and legal theories of the Class, and the harms the Bank suffered as a result of Schnucks' actions and omissions are typical of the harms suffered by all members of the Class.

13.  The Bank will fairly and adequately represent the interests of the Class and there are no disabling conflicts of interest between the Bank and the Class.

14.  The Bank is a member of the putative Class, possesses the same interests, and suffered the same injuries as Class members, making its interests coextensive with those of the Class. The interests of the Bank and the Class are aligned so that the motive and inducement to protect and preserve these interests are the same for each.

15.  Common questions of law and fact predominate over individualized questions.

16.  A class action is superior to other methods for the fair and efficient adjudication of this controversy. In addition, because the damages suffered by individual class members may be relatively small, the expense and burden of

litigation makes it impracticable for the Class members to individually seek redress for the harms they suffered as a result of Schnucks' acts and omissions. Individual actions would also present a substantial risk of inconsistent decisions, even though each Class member has an identical claim of right against Schnucks.

17. The Bank is represented by experienced counsel qualified to handle this case, and this action will be capably and vigorously pursued by the Bank and its counsel.

18. There will be no difficulty in managing this action as a class action, and the advantages of so doing for outweigh the expense and waste of judicial resources that would result from hundreds or thousands of separate adjudications of these claims.

### Facts

19. A plastic card transaction involves several distinct entities and steps. The transaction is initially processed by a merchant (*e.g.,* Schnucks), then electronically submitted to an acquiring bank that contracts with the merchant to process the merchant's plastic cards, then to a payment processor, then to the financial institution that issued the plastic card (*e.g.,* the Bank). During the last step, the issuing financial institution approves or declines the transaction.

20. If the issuing financial institution approves the transaction, the merchant electronically forwards the receipt to the acquiring bank, which pays the merchant and forwards the transaction data to the issuing financial institution, which reimburses the acquiring bank and deducts the funds from its customer's

account.

21. By accepting plastic cards for payment, Schnucks is contractually obligated to comply with regulations and standards issued by the plastic card companies. Schnucks agreed to comply with these regulations and standards for the benefit of both its customers and issuing banks like the Bank, which are also subject to regulations and standards as members of the plastic card networks.

22. A large Internet-based black market has developed to facilitate sale of hacked PII/CCD for use in plastic card fraud. Illicit web sites sell large inventories of PII/CCD to fraudsters and plastic card counterfeiters in bulk transactions. The value of PII/CCD sold in this manner can exceed several hundred dollars per plastic card account, depending on the type of card and indicia that the card data remains valid and useable. Purchasers of the hacked PII/CCD encode it to the magnetic strips of counterfeit plastic cards used by them or other individuals to whom they sell the counterfeit cards to make fraudulent purchases or to withdraw funds from card holders' accounts. Because counterfeiters often continue to buy, sell, and use this data for months or years after acquiring it, fraudulent transactions can occur years after the events that resulted in the unauthorized disclosure of the PII/CCD.

23. Multiple highly-publicized data breaches affecting countless millions of customers of other U.S. retail businesses put Schnucks on notice of the urgent need to properly secure and monitor its computer network and plastic card processing systems in order to safeguard PII/CCD against unauthorized disclosure. Data security experts who have investigated these data breaches have determined that

they can be readily prevented by adherence to industry-wide data security standards.

24.   The Bank and other Class members participated in plastic card networks and issued payments to Schnucks based on its explicit and implicit assurances that it would comply with the regulations and standards required by the plastic card companies. These regulations and standards included Card Operating Regulations and Payment Card Industry Data Security Standards ("PCI DSS"), which govern security of plastic card payment processing systems and required Schnucks to have adequate data security measures, policies, systems, and equipment in place to prevent unauthorized disclosure of customers' PII/CCD to third parties who might use the PII/CCD to make fraudulent charges, thereby causing losses to the Bank and other Class members who, after approving a transaction and issuing payment to the merchant, must credit customers' accounts for unauthorized and fraudulent transactions.

25.   As a merchant that accepted plastic cards for payment, Schnucks was, at all relevant times, required to comply with Card Operating Regulations and the PCI DSS.

26.   The Card Operating Regulations required Schnucks to maintain the security and confidentiality of PII/CCD from unauthorized disclosure. Specifically, the Card Operating Regulations prohibited Schnucks from retaining or storing card magnetic stripe information subsequent to the authorization of the transaction and from disclosing any cardholder account numbers, personal information, magnetic

8

stripe information, or transaction information to third parties other than its agent, the acquiring bank, or the acquiring bank's agents.

27. The PCI DSS required Schnucks, *inter alia,* to comply with twelve general standards that included installing and maintaining firewalls to protect data, protecting stored data, encrypting the transmission of payment cardholder data and sensitive information across public networks, using and regularly updating antivirus software, developing and maintaining secure systems and applications, restricting physical access to cardholder data, tracking and monitoring all access to network resources and cardholder data, regularly testing security systems and processes, and maintaining a policy that addresses information security.

28. As is pertinent here, the PCI DSS (and basic industry-wide data security standards) specifically required Schnucks to (1) properly segment and firewall its computer networks and payment processing systems to prevent access to payment card processing equipment from computer workstations not involved in payment card processing, (2) utilize two-factor authentication, a system that requires users to provide two distinct and specific types of credentials in order to gain access to payment card processing systems, and (3) install and maintain appropriate software to detect computer viruses and other malicious software and present such malicious software from affecting its plastic card processing systems.

29. On or about December 9, 2012, computer hackers gained access to Schnucks' computer network, including its credit and debit card processing systems,

9

and began harvesting the PII/CCD of approximately 2.4 million customers who paid for purchases at its grocery stores using plastic cards.

30. The hackers were able to obtain customers' PII/CCD because Schnucks' computer network and plastic card processing systems did not comply with industry-wide data security standards with which Schnucks was required to comply in order to accept plastic cards, including the Card Operating Regulations and the PCI DSS.

31. Schnucks failed to have appropriate systems in place to detect or remedy the data breach for more than three months. Moreover, after learning of the ongoing data breach, Schnucks continued to accept plastic cards and failed to take reasonable steps to promptly warn its customers, financial institutions, or the public at large that customer PII/CCD could be disclosed to third parties if plastic cards were used for payment at Schnucks' stores. As a result, Schnucks prevented the Bank and Class members from taking steps to prevent additional fraudulent charges to their customers' accounts.

32. By mid-March, 2013, Schnucks had received reports from banks that some customers who had used their plastic cards at its stores had incurred fraudulent charges to their accounts. On March 15, 2013, Schnucks' plastic card processing bank notified Schnucks that the data breach had resulted in fraudulent charges to numerous customers' accounts.

33. Nevertheless, Schnucks continued to accept plastic cards and did not warn its customers, financial institutions, or the public at large that use of plastic

cards at its stores could result in unauthorized disclosure of PII/CCD until March 30, 2013, when it issued a press release publicly acknowledging the breach.

34. Schnucks has publicly admitted that between December 9, 2012, and March 30, 2013, as many as 2.4 million plastic cards swiped at its stores in Missouri, Illinois, Indiana, Iowa, and Wisconsin were compromised with the result that customers' PII/CCD was disclosed to third parties and used in fraudulent transactions around the world.

35. The security breach and unauthorized disclosure of customers' PII/CCD to third parties was caused by Schnucks' violations of its obligations to abide by the best practices and industry standards concerning the security of its computer networks and plastic card payment processing systems, including the Card Operating Regulations and the PCI DSS.

36. Upon information and belief, the data breach and unauthorized disclosure of Schnucks' customers PII/CCD to third parties occurred because Schnucks failed to, among other things, properly segment and firewall its computer networks and payment processing systems, utilize two-factor authentication, and install and maintain appropriate software to prevent and detect computer viruses and other malicious software. As a result, malicious software installed on an employee workstation when the employee opened an email attachment or visited a website gained access to defendant's payment processing systems, allowing computer hackers to collect and retrieve customers' PII/CCD.

37. The hackers could not have accessed Schnucks' internal computer

network or plastic card processing systems and obtained its customers' PII/CCD but for Schnucks' inadequate security protections, including its failure to comply with Card Operating Regulations and the PCI DSS.

38. Schnucks' disclosure of its customers' PII/CCD permitted fraudsters to create counterfeit plastic cards and make fraudulent purchases and to withdraw money from customers' bank accounts.

39. After learning of the data breach, the Bank and other Class members were required to take reasonable measures to protect their customers and avoid fraud losses. The Bank and other Class members suffered substantial losses notifying customers that their PII/CCD had been compromised; cancelling, reissuing and mailing replacement plastic cards; and refunding fraudulent charges they had been required to pay to merchants. Schnucks and data security experts estimate the Class members' resulting losses in the tens of millions of dollars. These losses were completely preventable and would have been avoided if Schnucks had complied with Card Operating Regulations and the PCI DSS.

40. Schnucks has refused to reimburse the Bank and other Class members for financial losses and other damages they suffered as a result of Schnucks' unauthorized disclosure of its customers' PII/CCD.

**COUNT I – NEGLIGENCE**

41. The Bank and Class members repeat, reallege, and incorporate the foregoing paragraphs in this Complaint as if fully set forth herein.

42. Before and after coming into possession of PII/CCD, Schnucks had a

duty to exercise reasonable care in safeguarding and protecting it from unauthorized disclosure to third parties.

43. Schnucks also had a duty to identify, implement, maintain, and monitor the appropriate customer data security measures, policies, procedures, protocols, equipment, and software in order to detect and prevent data breaches and the unauthorized disclosure of PII/CCD.

44. Schnucks also had a duty to comply with Card Operating Regulations the PCI DSS and other industry-wide basic data security standards intended to detect and prevent the data breaches and the unauthorized disclosure of PII/CCD.

45. Schnucks also had a duty to timely disclose to customers, financial institutions, and the public at large that a data breach had occurred and that customers' PII/CCD was subject unauthorized disclosure should customers use their plastic cards at Schnucks' stores.

46. Schnucks also had a duty to timely disclose to customers, financial institutions, and the public at large that a data breach had occurred and that customers' PII/CCD was subject to misuse by third parties should immediate steps to prevent such misuse not be taken.

47. It was reasonably foreseeable to Schnucks that a failure to safeguard and protect customers' PII/CCD would cause direct and immediate damage to the Bank, the other Class members, and their customers.  Schnucks knew that a loss or theft of PII/CCD would require the Bank and the other Class members to take steps to protect their customers' PII/CCD and payment card information, including

notifying customers that their PII/CCD had been compromised; cancelling, reissuing and mailing replacement plastic cards; and refunding fraudulent charges.

48. Because Schnucks knew that a data breach would cause these damages to its customers, the Bank, and the other Class members, and because it represented to its customers the Bank, and the other Class members, that it had in place appropriate data security measures, policies, systems, and equipment in place to prevent unauthorized disclosure of customers' PII/CCD to third parties and that it was in full compliance with Card Operating Regulations the PCI DSS, Schnucks had a duty to implement such measures and comply with the regulations and standards.

49. The unauthorized disclosure of PII/CCD and the damages incurred by the Bank and the Class members as a result were a direct and proximate result of Schnucks' breach of its duties as set forth herein.

50. As a direct and proximate result of Schnucks' acts and omissions as described herein, the Bank and the members of the Class have suffered and will continue to suffer substantial and ascertainable injuries and damages including, *inter alia,* costs incurred in notifying customers that their PII/CCD had been compromised; cancelling, reissuing and mailing replacement plastic cards; and refunding fraudulent charges they had been required to pay to merchants.

## COUNT II – NEGLIGENCE *PER SE*

51. The Bank and Class members repeat, reallege, and incorporate the foregoing paragraphs in this Complaint as if fully set forth herein.

14

52. Schnucks was, at all relevant times, required to comply with, *inter alia,* Card Operating Regulations and the PCI DSS governing security of plastic card payment processing systems. These standards were created in order to prevent the damages sustained by the Bank and the Class members and establish a duty of care owed to them by Schnucks. The Bank and the Class are members of the class of persons intended to be protected by these standards and the damages they sustained are of the type these standards are intended to prevent.

53. Schnucks, by and through the aforementioned negligent acts and omissions, violated these standards, and its violation directly and proximately caused the Bank and Class members' damages. But for Schnucks' violation of these standards, these damages would not have occurred.

54. As a direct and proximate result of Schnucks' acts and omissions as described herein, the Bank and the members of the Class have suffered and will continue to suffer substantial and ascertainable injuries and damages including, *inter alia,* costs incurred in notifying customers that their PII/CCD had been compromised; cancelling, reissuing and mailing replacement plastic cards; and refunding fraudulent charges they had been required to pay to merchants.

## COUNT III – UNJUST ENRICHMENT

55. The Bank and Class members repeat, reallege, and incorporate the foregoing paragraphs in this Complaint as if fully set forth herein.

56. Schnucks has been unjustly enriched by its failure to protect PII/CCD from unauthorized disclosure, and by its false representations to the Bank, the

other Class members, and their customers. For example, Schnucks has benefitted from revenue from plastic card transactions made using PII/CCD it disclosed during the data breach; savings associated with not implementing proper data security measures, policies, systems, and equipment to prevent unauthorized disclosure of customers' PII/CCD to third parties; and increased revenue occasioned by customers' reliance on Schnucks' false assurances and representations that it had implemented proper data security measures, policies, systems, and equipment to prevent unauthorized disclosure of customers' PII/CCD to third parties, including Card Operating Regulations and the PCI DSS.

57. The Bank, the other Class members, and their customers may recover their damages, described above, based on their good faith reliance upon Schnucks' false representations and assurances because it would be inequitable for Schnucks to benefit at their expense while failing to disclose the truth.

58. Schnucks should therefore be compelled to refund or disgorge all wrongfully collected funds pursuant to the equitable doctrines of unjust enrichment and good faith reliance.

## COUNT IV – NEGLIGENT MISREPRESENTATION

59. The Bank and Class members repeat, reallege, and incorporate the foregoing paragraphs in this Complaint as if fully set forth herein.

60. Schnucks falsely represented to the Bank, the other Class members, their customers, and the public at large that Schnucks would safeguard and protect PII/CCD from unauthorized disclosure to third parties and that it had implemented

proper data security measures, policies, systems, and equipment to prevent unauthorized disclosure of customers' PII/CCD to third parties, including Card Operating Regulations and the PCI DSS.

61. The Bank, the other Class members, and their customers had no reason to doubt Schnucks' false representations and justifiably relied on them.

62. Schnucks' false representations caused the Bank, the other Class members, and their customers to shop at Schnucks with plastic cards and to choose plastic cards as their method of payment and thereby subject their PII/CCD to disclosure to unauthorized third parties.

63. As a result, Schnucks' false representations directly and proximately caused the Bank and the other Class members to suffer the above-described damages.

## **Prayer for Relief**

WHEREFORE, the Bank prays for judgment:

a) determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure, appointing the Bank as a representative of the Class and its counsel as Lead Counsel for the Class pursuant to Fed. R. Civ. P. 23(g);

b) awarding compensatory damages in favor of the Bank and other Class members against Schnucks for all damages sustained as a result of Schnucks' wrongdoing, in an amount to be proven at trial, including interest thereon;

    c) awarding the Bank and the Class their reasonable costs and expenses incurred in this action, including expert fees, the costs of investigation and reasonable attorneys' fees; and

    d) awarding such equitable, injunctive, or other relief as the Court deems just and proper.

Respectfully Submitted,

**THE DRISCOLL FIRM, P.C.**

BY:   */s/ John J. Driscoll*
       JOHN J. DRISCOLL, #6276464
        john@thedriscollfirm.com
       CHRISTOPHER J. QUINN, #6310758
        chris@thedriscollfirm.com
       211 North Broadway, 40th Floor
       St. Louis, Missouri 63012
       Telephone No. (314) 932-3232
       Fax No. (314) 932-3233